## UNITED STATES v. 98 $20 UNITED STATES GOLD COINS et al.

### No. 342.

District Court, E. D. Pennsylvania.

Aug. 17, 1937.

J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa.

Nathan I. Miller and I. Edward Master, both of Philadelphia, Pa., for defendant.

MARIS, District Judge.

The government has filed a libel for the forfeiture under section 4 of the Gold Reserve Act of 1934 (31 U.S.C. § 443 [31 U.S.C.A. § 443]) of $2,000 in United States gold coin seized in the possession of Israel W. Switt on August 22, 1934. Sections 2 (a), 3, and 4 of the act in question (31 U.S. C. §§ 441, 442 and 443 [31 U.S.C.A. §§ 441, 442, 443]) are as follows:

"Sec. 2 (a). Upon the approval of this Act [January 30, 1934], all right, title, and interest, and every claim of the Federal Reserve Board, of every Federal Reserve bank, and of every Federal Reserve agent, in and to any and all gold coin and gold bullion shall pass to and are hereby vested in the United States; and in payment therefor credits in equivalent amounts in dollars are hereby established in the Treasury in the accounts authorized under the sixteenth paragraph of section 16 of the Federal Reserve Act, as heretofore and by this Act amended (U.S.C., title 12, sec. 467) [section 467 of Title 12]. Balances in such accounts shall be payable in gold certificates, which shall be in such form and in such denominations as the Secretary of the Treasury may determine. All gold so transferred, not in the possession of the United States, shall be held in custody for the United States and delivered upon the order of the Secretary of the Treasury; and the Federal Reserve Board, the Federal Reserve banks, and the Federal Reserve agents shall give such instructions and shall take such action as may be necessary to assure that such gold shall be so held and delivered.

"Sec. 3. The Secretary of the Treasury shall, by regulations issued hereunder, with the approval of the President, prescribe the conditions under which gold may be acquired and held, transported, melted or treated, imported, exported, or earmarked: (a) for industrial, professional, and artistic use; (b) by the Federal Reserve banks for the purpose of settling international balances; and, (c) for such other

purposes as in his judgment are not inconsistent with the purposes of this Act [section 441 and this section]. Gold in any form may be acquired, transported, melted or treated, imported, exported, or earmarked or held in custody for foreign or domestic account (except on behalf of the United States) only to the extent permitted by, and subject to the conditions prescribed in, or pursuant to, such regulations. Such regulations may exempt from the provisions of this section, in whole or in part, gold situated in the Philippine Islands or other places beyond the limits of the continental United States.

"Sec. 4. Any gold withheld, acquired, transported, melted or treated, imported, exported, or earmarked or held in custody, in violation of this Act [sections 441 and 442] or of any regulations issued hereunder, or licenses issued pursuant thereto, shall be forfeited to the United States, and may be seized and condemned by like proceedings as those provided by law for the forfeiture, seizure, and condemnation of property imported into the United States contrary to law; and in addition any person failing to comply with the provisions of this Act [said sections] or of any such regulations or licenses, shall be subject to a penalty equal to twice the value of the gold in respect of which such failure occurred."

The gold coins in question were seized by agents of the government from Switt's person as he was about to board a train from Philadelphia to Baltimore where he planned to meet a dealer in old gold with whom he had previously done business. He had taken the gold from his safe deposit box in Philadelphia and it was his intention to put it in a box in Baltimore or return it to Philadelphia. He stated that he planned ultimately to turn the gold in to the Treasury.

▮ It is clear from a consideration of the statute that title to this coin had passed on January 30, 1934, to the United States, and that it should have been delivered to the Federal Reserve Bank for the account of the United States pursuant to the regulations issued by the Secretary of the Treasury under authority of the act. It is also clear that Switt had no right to hold or transport the gold in August, 1934. The government accordingly seeks to condemn the gold under section 4 of the act on the ground that it was withheld and transported in violation of sections 2 (a) and 3 of the act and of the regulations issued thereunder.

▮ It may be admitted, as Switt contends, that section 4, like the acts providing for the condemnation of property unlawfully imported into the United States, is a highly penal statute and that intent to violate the act must be shown by the government. Here, however, Switt admitted that he knew of his duty to deliver up these gold coins. He had, in fact, previously delivered up other gold in accordance with the law. His only excuse was that he feared delivery of the gold would incriminate him and hoped in the future to find some legal way to turn it in to the Treasury.

▮ It seems clear to me, however, that this was no defense. On the contrary, it serves more clearly to show that Switt's withholding and transporting the gold was with intent to violate the act. That he hoped at some time in the future to obey the law's commands did not excuse his present knowing violation of it. The government's prayer for the condemnation of the gold coin in question must accordingly be granted.

A decree of forfeiture may be entered.